I would like to reserve one minute for rebuttal. May it please the Court, Michael Crowley on behalf of Anatoly Zakharov, who is not present here, obviously. By order of this Court, we will only be addressing non-sentencing issues because of Blakely. But I believe that Blakely does have an issue before this Court, as even the non-sentencing issues. And the two issues that we do have to address is both the jurisdictional issue and the suppression of the statement issue. So first as to the jurisdictional issue, and the reason I bring up Blakely is that although it did somewhat limit itself to sentencing, and now the Supreme Court, certainly the U.S. Supreme Court, will be dealing with sentencing issues, I believe that a, not even a subtext, but the main text of Blakely v. Washington is that Apprendi meant what it said when it said that the jury has to decide these issues. And it was saying at that time, in fact that the jury has to decide the jurisdictional issues. Is that what you're urging? Yes. Is that where we're going? Yes. Yes. That the nexus issues should be decided by the jury, especially the factual parts. What do we do with the fact that the statute says that the judge shall do so preliminarily or before the trial? And what happens if the judge says, I do have jurisdiction, but under – but we agree with you that it has to be submitted to the jury, and the jury concludes just the opposite? Well, that would be a good thing to your left point. It would be a good thing for the defendants, and certainly gerst for a nice appellate issue, but As to the first issue, Your Honor, I think that that was the very points made in Apprendi and Blakely, is that the legislature, in Apprendi they were talking about the states and also Apprendi But Apprendi gives it to the jury. We have a different situation, as I understand your that says the judge shall do it. Right. And Yes, we do. Is it your argument, then, that Apprendi or Blakely would invalidate that statutory provision so that the court would have no role in determining jurisdiction? Yes, it is my position, and Would it be like – are you analogizing to the bank robbery, federal bank robbery, where the jury has to find that it was FDIC-insured? I hadn't thought about that, but yes, and the Hobbs Act, where they still have to find the contacts. But I think Apprendi said, and that was the issue Just a minute. When you say the contacts under the Hobbs Act, you're talking about the interstate commerce nexus? Right. Which is pretty similar to the – I mean, that really is a nexus test, isn't it, under the Hobbs Act? Well, in that case, it's – my experience is one trial under the Hobbs Act, and that experience was in which we – it was a de minimis showing by the government required that it affects commerce in some way. Is it submitted to the jury? Yes. That's the issue? Well, we did in that case, the one case I have. I have it used. Well, I guess the question is You have to. I don't have it at my fingertips, but I believe it's in the model instructions, actually. I think it's an element in the model instructions. Well, let me ask you a related question to that. Does it matter that Congress enacted the MDLEA under the Piracies and Felonies Clause – what is it, Article I, Section 8, Clause 10 – as opposed to the Commerce Clause? Well, I understand that issue, but I don't think that that changes the authority here in the Ninth Circuit that you need that nexus. I believe it is a due process, pure Fifth Amendment due process argument, regardless of whether it's a Congress context argument, because it's akin to personal jurisdiction. Harkening back to my civil procedure. But the jurisdiction, as I understand the statute, is conferred if the foreign government under whose flag the vessel is sailing gives diplomatic permission, for want of a better term, to the United States government to board and seize the vessel. Right. There's several methods, actually, within the statute. There really isn't, under the MDLEA, there isn't a nexus as you would find in an interstate commerce case, where there has to be some effect on interstate or foreign commerce. Here, jurisdiction is conferred when the foreign government says, you have our permission to go aboard and apply your law to our ship. That's a statutory jurisdiction. What I'm referring to is a constitutional jurisdiction that this Circuit has found to be requiring a nexus, that it is coming to the United States or it's going to have an effect on the United States, separate and apart. And back to the original point that the Court asked about Apprendi was that Justice Scalia, in his concurrence, said that if the legislature states, in this case, same analogy to Congress, can just write out something that is constitutionally mandated, that violates the Constitution. In other words, if you took it to the extreme, they could just say, beyond a reasonable doubt, is not required under this statute, for whatever reason, because it's a regulatory statute, let's say, or something like that. And if they can just write that out, that is an impermissibly unconstitutional use of the power of the legislature. And so when Congress wrote that. How do you square that, though, with the piracy and felony clause? The Constitution says that Congress shall have the power to define and punish piracies and other felonies on the high seas. Right. And there's still going to, even though it's not a commerce analysis, if you go with the piracy analysis, it still is an issue that goes to due process under the Fifth Amendment. In other words, you have to prove the elements of the case. If Congress – if what the Court is saying, I would have to agree. If the Court is saying that the piracy part of the Constitution gives carte blanche to the Congress to pass whatever they'd like in that regard, I would have to agree to that extreme example. However, I believe the Constitution still overlays, even though they're relying on the piracy power rather than commerce power. And so in that case, what the Court has said as an apprendi and then reaffirmed in Blakely is that these – and in fact in Gaudin also saying that these elements of the offense have to go to the jury. But didn't Congress amend the MDLEA statute after there was a question in a Supreme Court decision that jurisdiction was an element? I guess the statute originally made it an element. Right. And then Congress changed it as a result of the Supreme Court case and said, no, that's – we didn't mean to make it an element. Here's how we're going to handle jurisdiction. Right. There's no question about what the intent of Congress was. I'm not arguing that. The question is whether constitutionally they could do that. Well, that's a different question. I mean, there's no question that it was their intent to do it, to wipe out any arguments about jurisdiction. But constitutionally, what I'm saying under apprendi and Blakely is that they can't do that. And how does that square with Bynum? Well, and I understand under Bynum, I – first of all, Bynum, of course, was decided before Blakely. Right. And I understand that the Court was part of that decision. Second of all, you have – that was an 18 U.S.C. 666 case, which they have a built-in jurisdictional threshold amount of money that the Federal – the Federal money. Right. So it's distinguishable in that sense in that they didn't look at the nexus issue, the fundamental due process issue that's required on this. And it's an important issue because – even for public policy. When I mention this case that they were seized 500 miles off of Acapulco, everybody says to me, what? And so it is a public policy reason. I think it's a very important circuit decision here, despite the fact that if we're going to have that type of jurisdictional requirement, then this is certainly the type of case, factually, that failed the nexus test. I mean, you had an all-Russian crew. You had expert testimony that said that it could very easily and probably was going to Vladivostok because they could get more money for the drugs. You had the crew. You had the fuel. You had all the basis navigational equipment to be able to do it. So if that nexus means something, then it is important that this case factually falls within that. As to – briefly as to the suppression of the statement, I will make one point on that that is in my brief but I think is the most important point. I understand the contours of the cases about the delay. We're in a modern age now where I don't think there's any excuse for them not getting a probable cause determination by a detached magistrate from a ship because they have plenty of communications devices. But what they did was bring this defendant back to port and they didn't take him before a magistrate 11 days later. They took him to an interrogation room before the DEA. And that was after they instructed the Coast Guard people not to question him. They'd rather have the DEA question him after he's been out in a foreign country subjected to interrogation. Thank you. Thank you. Your Honor, and may it please the Court, my name is David Weiner. I'm appearing on behalf of the United States of America. Your Honors, there are three issues in this case. First, whether the district court properly determined that the government adequately established the existence of a nexus sufficient to permit extraterritorial prosecution under the MDLDA. Second, whether the district court properly denied the motion to acquit. And third, whether the district court properly denied the motion to suppress for alleged violations of the Fourth Amendment and Federal Rule of Criminal Procedure 5a. With respect to the nexus issue, Your Honor, it's the government's position that Blakely does not fundamentally alter this Court's consistent and uninterrupted jurisprudence, holding that nexus determination under the MDLDA is an issue for the district court to determine before trial and need not be submitted to the jury for determination of proof beyond a reasonable doubt. In fact, as recently as 2003 in the United States v. Moreno-Murillo, this Court once again reaffirmed that principle. With respect to Blakely in particular, Your Honor, it's true that Blakely does reaffirm the principles elaborated by the Supreme Court in Apprendi. However, what was at issue in both Apprendi and in Blakely was a situation in which a State legislature was essentially transferring elements of the criminal code and placing it into the sentencing system. That's not what you have with respect to the nexus issue. Indeed, there's references to whether or not Congress can simply write out of the statute this nexus requirement. And I think it's important to keep in mind that Congress never wrote this into the statute in the first place, which I think is an important distinction to keep in mind, and it distinguishes the structure of the MDLDA from what existed both in Apprendi and in Blakely. Your Honor, with respect to the validity of 1903F and what impact that has here, I think a couple of points are important to keep in mind. First is that when this Court initially decided how to treat the nexus requirement in Klimovich's Valoria in 1998, it noted, although it did not rely on the existence of 1903F. So, Your Honor, when this Court initially made the determination that nexus is not an element of the MDLDA offense, it did so not on the basis of anything that Congress said, but it did so applying clear and consistent Supreme Court precedent, in particular the cases United States v. Gowdin and United States v. Wells. Moreover, Your Honor, just recently in 2002, the Eleventh Circuit in United States v. Tinoco addressed the impact of 1903F, and in particular in that case, there was a challenge to a prosecution that was brought under 1903, I believe it was C1C, which would be the same provision that was at issue in this case. There was a Gowdin challenge brought to that prosecution with respect to the impact of 1903F, and the Eleventh Circuit specifically rejected that challenge. And I think its language is quite useful, because what the Court of Appeals said in that case is that the mere fact that factual issues have to be determined by the jury is not talismanic with respect to whether or not Congress can specify that that particular fact is not an element of the offense. And I think that applies even more so here, where Congress did not legislate this to quote judicial gloss, end quote, on the statute. With respect, Your Honor, as to whether or not the government carried its factual burden of demonstrating the existence of a nexus, I think it's important to keep in mind the standard of review that is applicable in this case. As the Ninth Circuit said in United States v. Medja, the clear error standard of review applies. Applies to what? To the district court's determination that the government carried its factual burden of demonstrating by a preponderance of the evidence that the offense conduct in the particular case was likely to have effects in the United States. Medjuk further clarified. So you're characterizing that as a factual question, right? That's correct, Your Honor. That's how this Court has repeatedly treated the nexus determination. So, for example, in United States v. Medjuk, the district court held extensive hearings to determine where the court, where I think it was Hashish was headed in that case that was brought from Pakistan in a very complex conspiracy. And the district court found that although the drugs were not directly destined for the United States, nevertheless, the nexus had been established because, largely because of the geographical nature of the drug trade. And in particular, the district court found that those drugs would be likely to have effects in the United States. Moreover, the district court also found that various elements of the conspiracy had been planned and negotiated in the United States. On appeal in this Court, this Court said that the district court's factual finding was not clearly erroneous. It's hard for me. It's really difficult for me to understand if it's a factual issue that's necessarily to be determined, you know, before guilt can be established, even though Congress says it's not an element, why it's not a fact that has to be proven to a jury. It's a simple fact that has to be proven to establish guilt, doesn't it? Actually, Your Honor, I sort of disagree with that characterization of the nexus requirement, and I think that's something that sort of distinguishes it from the nexus requirement that exists, for example, in the Hobbs Act. Under the Hobbs Act, the nexus requirement is essentially a predicate to whether or not the offense conduct has taken place. That is, if the government fails to establish the existence of the nexus to interstate commerce, there is no actual offense. That's not true with respect to the MDLEA. Whether or not the government establishes the existence of a nexus does not go to whether or not the offense occurred and does not go to whether or not the defendant That's not true of bank robbery. With respect to whether or not the offense's jurisdictional element is present. Well, but again, Your Honor, I think that's a situation where Congress has specified that the nexus requirement is an element of the offense, and the reason it does that is because of the Commerce Clause requirements that exist by virtue of Lopez and similar cases. We don't have that situation in any respect under the MDLEA, Your Honor, for reasons that the Court noted in particular that Congress wasn't acting pursuant to its Commerce Clause authority. In fact, as this Court has repeatedly said in upholding the MDLEA, the Piracy and Felonies Clause gives the – gives Congress quite far-reaching authority to regulate conduct that occurs on the high seas, and in particular, conduct that occurs on the high seas that's aimed at causing harm in the United States. And that's exactly what Congress did under the MDLEA. And for that reason, Your Honor, that's why we think that the nexus requirement in this context is quite distinguishable from the nexus requirement that exists under statutes like the Hobbs Act or with respect to bank – Federal prosecution for bankruptcy, Your Honor. Your Honor, I'd like to turn quickly to the motion to suppress. There are two issues with respect to the motion to suppress. One is the Fourth Amendment argument brought under County of Riverside, and the second is the argument brought under Federal Rule of Criminal Procedure 5a, whether or not the defendant received an initial appearance in front of a Federal magistrate without unnecessary delay. As we explained in our briefs, Your Honor, it's the government's position that the district court properly resolved both of these issues and that there was neither a violation of the Fourth Amendment nor of Rule 5a. With respect to the Fourth Amendment issue, Your Honor, appellant's position is that it was somehow impermissible for the government to question Mr. Zakharov upon arrival in San Diego, and there was something untoward, perhaps, about the fact that the Coast Guard did not question any of the crew members of the Spes de Maru on board the Coast Guard Cutter Active. I think it's very important to keep in mind, Your Honors, the structure of the Coast Guard and how it operates on the high seas. Although the Coast Guard is operating in sort of a law enforcement capacity when it's doing these sorts of boardings, it's also important to remember that it also has other safety functions that it has to fulfill, that it is ensuring that a large vessel is being towed back safely to port. So the Coast Guard's policy is essentially never to interrogate any suspects that are brought on board ships, to ensure that those individuals' constitutional rights are violated. Now, in this case, Your Honor, as the district court determined, the Fourth Amendment was essentially inapplicable to the defendant under the Verdugo-Orquidez doctrine. The defendant is a foreign alien who had no contacts whatsoever with the United States. Kennedy. Except he had a nexus, huh? Sufficient to exert the criminal jurisdiction of the United States. Well, Your Honor, that's the exact same thing that would have existed in Verdugo-Orquidez itself, and the Supreme Court did not seem to be especially troubled by that disjunction. And I think the same thing applies exactly here, Your Honor. The fact is that for the reasons stated by the Supreme Court in Verdugo-Orquidez, the Fourth Amendment is simply inapplicable to foreign aliens who are outside of the United States and who have made no efforts whatsoever to make any sort of connection with the United States, aside from their criminal conduct. Moreover, Your Honors, when the defendant was brought to San Diego, and presumably the Riverside clock would have kicked in at that time, it's important to keep in mind that the defendant, before being questioned, received his Miranda rights. He — his waiver was knowing, intelligent and voluntary, as the district court determined. And indeed, that determination is adequately supported by the record. Moreover, Your Honor, I think that the manner in which he was questioned fully comports with this Court's decisions regarding the Fourth Amendment rights of foreign nationals and whether and under what circumstances they can waive their rights. So for these reasons, Your Honor, the government would submit that the district court properly resolved all three of the issues presently on appeal and that the conviction ought to be affirmed. Thank you. Last point first. There is no — no exception to the Riverside rule that says when you land brought here by law enforcement on U.S. soil that the 48 hours begin to run. He was five days held before there was any evidence, and then there was another six days held where they were bringing him back to port. So that does not apply. You have to take into account — But you do acknowledge that we are somewhat flexible, given extraordinary circumstances, in applying the 48-hour rule. Yes. And two issues as to that. One is that they had totally available means to be able to communicate to get a probable cause determination. And the second thing is that bothers me the most, I believe, is that when they did land on the shore, they didn't bring him with all deliberate speed to the magistrate. As to the other issue, the determination, the ultimate determination, was a factual determination. The province of a jury for time immemorial. It is what they talk about in Apprendi and Blakely, how important those contours are. When Justice Scalia answered Justice O'Connor's dissent in Blakely about the problems of allowing all these things to go to the jury, he said, we have to — it's the contours that have to work out, but there's no question that the Constitution calls for it. The judge made specific credibility findings that should have belonged to the jury. And in any event, I believe they were clearly erroneous. I think a fair reading — I understand the standard is high even under clearly erroneous, but these were clearly erroneous. If you look at the difference in the experts, if you look at the case, same opinion that she has given in every single case that came down where the DEA has the complete control over this expertise. We were able to have an ex-DEA agent testify and to contradict this expert based on even broader information. But if you are wrong in your Blakely argument, then the district court could sit as the finder of fact, as it frequently does at a suppression hearing, and make an adverse credibility determination because he liked the government's expert better than yours. I agree. And I think a fair reading of this, though, would find that it would be clearly erroneous if the record book on this laid out in my opinion. I understand. Thank you. Okay. Thank you. Thank you. It's very well argued. Yes. Thanks, counsel, for your argument. Case just argued is submitted. And I think I'd like a break. Okay. We'll take a break.
judges: Tashima, Fisher, Tallman